

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-23-00971-CV

**IN THE INTEREST OF X.I.H.**, a Child

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2022-PA-01004
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Patricia O. Alvarez, Justice
Beth Watkins, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: March 6, 2024

AFFIRMED

In this parental rights termination case, the trial court terminated Mom's parental rights to her child X.I.H.[i]  Mom challenges the legal and factual sufficiency of the evidence for the trial court's finding on the best interest of the child.

Because the evidence was legally and factually sufficient to support the trial court's finding under the elevated evidentiary standards, we affirm the trial court's order.

### BACKGROUND

Mom is the only appellant, and we limit our recitation of the facts to those pertaining to Mom and the best interest of the child.

---

[i] We use aliases to protect the child's identity.  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8.

X.I.H. was born to Mom in late October 2020. On June 23, 2022, Mom was arrested for assaulting the man she was living with. Because Mom was X.I.H.'s only caregiver, and there were no other family members or family friends to whom X.I.H. could be released, X.I.H. was taken into care by the Texas Department of Family and Protective Services.

The Department created a service plan for Mom. It required her to attend a parenting class, submit to random drug tests, and attend individual counseling. The trial court approved the plan, and it ordered her to comply with each of its requirements.

Mom completed an anger management class, but no other ordered services, because she remained incarcerated from the time X.I.H. was removed until trial.

After a bench trial on the merits, the trial court found by clear and convincing evidence that Mom's course of conduct met the grounds in Family Code subsections 161.001(b)(1)(N) and (O), and that terminating Mom's parental rights was in X.I.H.'s best interest. The trial court terminated Mom's parental rights to X.I.H., and it appointed the Department as his permanent managing conservator.

Mom appealed. Before we address Mom's sole issue, we briefly recite the applicable evidentiary and appellate review standards.

## EVIDENCE REQUIRED, STANDARDS OF REVIEW

"[I]n a bench trial, the judge as the trier of fact weighs the evidence, assesses the credibility of witnesses and resolves conflicts and inconsistencies." *In re S.J.R.-Z.*, 537 S.W.3d 677, 691 (Tex. App.—San Antonio 2017, pet. denied); *accord In re F.M.*, 536 S.W.3d 843, 844 (Tex. App.—San Antonio 2017, no pet.).

On review, an appellate court must not "substitute its own judgment for that of a reasonable factfinder." *In re Commitment of Stoddard*, 619 S.W.3d 665, 668 (Tex. 2020); *accord In re*

*H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005).

The evidentiary standard[1] the Department must meet and the statutory grounds[2] the trial court must find to terminate a parent's rights to a child are well known, as are the legal[3] and factual[4] sufficiency standards of review. We apply those standards here.

## BEST INTEREST OF THE CHILD

In her only issue, Mom argues the evidence was legally and factually insufficient to support the trial court's finding that terminating her parental rights was in X.I.H.'s best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2).

### A. Unchallenged Statutory Grounds Findings

"To affirm a termination judgment on appeal, a court need uphold only one termination ground—in addition to upholding a challenged best interest finding—even if the trial court based the termination on more than one ground." *In re N.G.*, 577 S.W.3d 230, 232 (Tex. 2019) (per curiam); *accord In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

Here, the trial court found that Mom constructively abandoned X.I.H. and she failed to comply with her court-ordered Family Service Plan. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N), (O).

Mom does not challenge those findings, and we need not address them. *See* TEX. R. APP. P. 38.1(f), (i); *In re N.G.*, 577 S.W.3d at 235. She challenges only the best interest finding.

### B. Best Interest of the Child Factors

To ascertain the best interest of the child, we consider the Family Code statutory factors[5] and the supreme court's *Holley* factors.[6] Applying the legal and factual sufficiency standards, we review the trial court's best interest of the child finding by examining the evidence.

The trial court heard the following testimony regarding X.I.H.'s age and vulnerabilities, Mom's course of conduct, and X.I.H.'s placement.

## C.  Child's Age and Vulnerabilities

When Mom was arrested and X.I.H. was removed, he was twenty-months old.  Because there were no other family members or family friends with whom X.I.H. could be safely placed, the Department placed X.I.H. with a foster family.

After he was placed, he received an early childhood intervention development evaluation. The evaluation determined that he was developmentally delayed, and he needed speech therapy and specialized skills training.

At the time of trial, X.I.H. was turning three years old.  *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (12); *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976) (factors (B), (C), (D)).

## D.  Mom's History of Substance Abuse

Mom has a multi-year history of substance abuse including abusing methamphetamine and cocaine.  Within the last five years she lost her parental rights to at least two of her other children because of her admitted drug addiction.

In April 2022, when X.I.H. was in her care, Mom tried to stay at the Salvation Army shelter. They performed an oral swab drug test on her, and she was denied entry.  To explain why she tested positive for amphetamines, Mom admitted that she took "a pill from a friend."  When asked if her taking unprescribed amphetamines while she was caring for then eighteen-month-old X.I.H. harmed him, she said, "No, it did not."

When she was arrested in June 2022 for assaulting her roommate, she was held in Bexar County until she could be extradited to Oklahoma.  There, she had four pending charges—two felonies and two misdemeanors: possession of a controlled substance, possession of drug paraphernalia, falsifying identity to create liability, and perjury.

At the time of trial, Mom was still incarcerated in Oklahoma, but she insisted she had overcome her addictions to methamphetamine and cocaine. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (7), (8), (10), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (H)); *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.) ("A factfinder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent."); *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (same).

### E.     Mom's History of Anger, Violence

Mom also has a multi-year history of anger, violence, and domestic violence. One of the grounds for her previously losing her parental rights to two of her children was domestic violence in front of her children. Mom insisted she never got violent in front of her children, but she did not deny committing domestic violence.

The Department's case worker testified that Mom was erratic, and at times Mom would yell at X.I.H.

More recently, on June 23, 2022, Mom was arrested for assaulting the man she was living with. She insisted she did not assault her roommate; according to her, "he had a seizure that caused him to bleed." When she was arrested, she admitted she "put up a fight with [the police]" but she said she did so "because they were not watching [X.I.H.]."

She denied that the assault occurred in X.I.H.'s presence because he was asleep in his play pen at the time of the incident, but she also said that X.I.H. was following her out to the police car as she was being arrested.

She pled guilty to the assault charge and was convicted, but in her testimony in this case, she repeatedly insisted she did not assault her roommate.

While she was incarcerated, Mom completed an anger management course. She testified that because she has been incarcerated, she has had time to reflect, and the time has helped her address her "anger situation." *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (3), (7), (8), (10), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (H)); *see also In re D.M.*, 452 S.W.3d at 471; *Walker*, 312 S.W.3d at 617 ("Evidence that a person has engaged in abusive conduct in the past permits an inference that the person will continue violent behavior in the future.").

## F.    Safe, Stable Housing

Mom's service plan did not expressly require her to establish and maintain safe and stable housing for X.I.H., but the trial court could certainly consider Mom's history of caring for X.I.H. *See* TEX. FAM. CODE ANN. 263.307(b)(12)(D) (addressing a family's responsibility to provide their child with, inter alia, "a safe physical home environment"); *In re L.W.*, No. 01-18-01025-CV, 2019 WL 1523124, at *18 (Tex. App.—Houston [1st Dist.] Apr. 9, 2019, pet. denied) (mem. op.) ("[A child's] need for a safe and stable home is the paramount consideration in assessing the best interest of the children.").

The case worker testified that "[X.I.H.] was going from homeless shelter to homeless shelter," and Mom did not dispute that. But Mom testified that for the two months before X.I.H. was removed, she had a job and a place to live. *See* TEX. FAM. CODE ANN. § 263.307(b)(11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (G), (H)); *see also In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009) (noting that even when a parent's "recent improvements . . . are significant, evidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of drug use and irresponsible choices").

## G.    Child's Placement

The case worker testified that X.I.H. has been with the same foster family since two days after he was removed. In his foster home, he is in a safe environment, he is not exposed to violence

or drug abuse, he is very loved, and he is thriving. He is receiving the services he needs to treat his developmental delays, and "he has made tremendous strides [such as] talking in sentences." X.I.H. is "very bonded" to his foster family. "They love him. They care for him. They make sure all his needs are met." As a family, they are going to a Disney theme park for his third birthday. "He's really just incorporated as part of their family," and it would be traumatic for X.I.H. to be removed from his foster family.

The case worker opined that it was in X.I.H.'s best interest to terminate Mom's parental rights so he could say in the placement with his foster family.

The child's court-appointed special advocate (CASA) testified that X.I.H. is "very, very bonded with the [foster] family . . . including all of the children in the home, [he] responds very well to the foster parents," and it was in X.I.H.'s best interest that Mom's parental rights be terminated so he could remain with his foster family. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (12), (13); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (F), (G)).

## H.     Ad Litem's Recommendation

The child's ad litem expressed concern about Mom's long history of drug abuse and her ability to care for X.I.H. after she was released from jail. He had heard Mom admit that she had previously lost her parental rights to at least two of her other children because of her drug abuse, and he expressed concern that "we don't really have anything to measure how—how well Mom would do on the outside" once she again had access to drugs. The ad litem recommended that it was in X.I.H.'s best interest that Mom's rights be terminated so that he could continue to live with his foster family "in a very good home [where they love him] and take very good care of him." *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (10), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (F), (G), (H)).

## I.      Sufficient Evidence

As the factfinder, the trial court could have believed the testimony about Mom's multi-year history of drug abuse and her multi-year history of domestic violence. *See In re S.J.R.-Z.*, 537 S.W.3d at 691; *In re F.M.*, 536 S.W.3d at 844.

It could have inferred that Mom's drug abuse before X.I.H. was born, and her more recent drug abuse while X.I.H. was in her care, would endanger X.I.H. if he was returned to her care. *See In re D.M.*, 452 S.W.3d at 471 ("A factfinder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent."); *Walker*, 312 S.W.3d at 617 (same).

The trial court could have disbelieved Mom's denial that she was never violent in front of X.I.H., believed that she was erratic and had yelled at X.I.H., believed that X.I.H. had developmental delays due to Mom's conduct, and concluded that Mom's conduct threatened X.I.H.'s physical health and emotional development. *See In re R.S.-T.*, 522 S.W.3d at 113 (drug abuse, family violence); *In re D.M.*, 452 S.W.3d at 471 (past conduct may recur).

It could have believed the testimony that X.I.H. was doing well living with the foster family, they are meeting his present regular and special needs, and they will meet his future needs. *See In re S.J.R.-Z.*, 537 S.W.3d at 691; *In re F.M.*, 536 S.W.3d at 844.

Having reviewed the evidence under the appropriate standards, we conclude the trial court could have "reasonably form[ed] a firm belief or conviction" that it was in X.I.H.'s best interest for Mom's parental rights to be terminated. *See In re H.R.M.*, 209 S.W.3d at 108 (citing *In re C.H.*, 89 S.W.3d at 25). Therefore, the evidence was legally and factually sufficient to support the trial court's best-interest-of-the-child finding. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

We overrule Mom's sole issue.

**CONCLUSION**

For the reasons given above, we affirm the trial court's order.

Patricia O. Alvarez, Justice

---

[1] Clear and Convincing Evidence. If the Department moves to terminate a parent's rights to a child, the Department must prove by clear and convincing evidence that the parent's acts or omissions met one or more of the grounds for involuntary termination listed in section 161.001(b)(1) of the Family Code and terminating the parent's rights is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b); *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002). The same evidence used to prove the parent's acts or omissions under section 161.001(b)(1) may be used in determining the best interest of the child under section 161.001(b)(2). *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002); *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.); *see also* TEX. FAM. CODE ANN. § 161.001(b). The trial court may consider a parent's past deliberate conduct to infer future conduct in a similar situation. *In re D.M.*, 452 S.W.3d at 472.

[2] Statutory Grounds for Termination. The Family Code authorizes a court to terminate the parent-child relationship if, inter alia, it finds by clear and convincing evidence that the parent's acts or omissions met certain criteria. *See* TEX. FAM. CODE ANN. § 161.001(b). Here, the trial court found Mom's course of conduct met subsections (N) and (O):

> (N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and:
> (i) the department has made reasonable efforts to return the child to the parent;
> (ii) the parent has not regularly visited or maintained significant contact with the child; and
> (iii) the parent has demonstrated an inability to provide the child with a safe environment; [and]
> (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

*Id.* § 161.001(b)(1).

[3] Legal Sufficiency. When a clear and convincing evidence standard applies, a legal sufficiency review requires a court to "'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005) (quoting *In re J.F.C.*, 96 S.W.3d at 266). If the court "'determines that [a] reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true,'" the evidence is legally sufficient. *See id.*

[4] Factual Sufficiency. Under a clear and convincing standard, evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d at 25; *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must consider "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *In re J.F.C.*, 96 S.W.3d at 266; *accord In re H.R.M.*, 209 S.W.3d at 108.

[5] Statutory Factors for Best Interest of the Child. The Texas legislature codified certain factors courts are to use in determining the best interest of a child:

> (1) the child's age and physical and mental vulnerabilities;
> (2) the frequency and nature of out-of-home placements;
> (3) the magnitude, frequency, and circumstances of the harm to the child;
> (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department;
> (5) whether the child is fearful of living in or returning to the child's home;
> (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;
> (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;

(8)　whether there is a history of substance abuse by the child's family or others who have access to the child's home;

(9)　whether the perpetrator of the harm to the child is identified;

(10)　the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;

(11)　the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;

(12)　whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with:

(A)　minimally adequate health and nutritional care;

(B)　care, nurturance, and appropriate discipline consistent with the child's physical and psychological development;

(C)　guidance and supervision consistent with the child's safety;

(D)　a safe physical home environment;

(E)　protection from repeated exposure to violence even though the violence may not be directed at the child; and

(F)　an understanding of the child's needs and capabilities; and

(13)　whether an adequate social support system consisting of an extended family and friends is available to the child.

TEX. FAM. CODE ANN. § 263.307(b); *see In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018) (recognizing statutory factors).

[6] *Holley* Factors. The Supreme Court of Texas identified the following factors to determine the best interest of a child in its landmark case *Holley v. Adams*:

(A)　the desires of the child;

(B)　the emotional and physical needs of the child now and in the future;

(C)　the emotional and physical danger to the child now and in the future;

(D)　the parental abilities of the individuals seeking custody;

(E)　the programs available to assist these individuals to promote the best interest of the child;

(F)　the plans for the child by these individuals or by the agency seeking custody;

(G)　the stability of the home or proposed placement;

(H)　the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(I)　any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (footnotes omitted); *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors).